**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
ROBERT D. FITZGERALD,

                        Plaintiff,

    - v -                                          Civ. No. 1:10-CV-451
                                                                     (MAD/RFT)

CITY OF TROY, *et al.*,

                        Defendants.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## DECISION and ORDER

On October 27, 2011, Fitzgerald registered a laundry list of Defendants' discovery deficiencies in responding to his Demands, chief among them is the response to Fitzgerald's request for the Internal Affairs file of Troy Police Officer Stephen Seney. Dkt. No. 76, Pl.'s Lt.-Mot., dated Oct. 27, 2011, at pp. 2-3. The abridged rendering as to why Fitzgerald seeks Seney's Internal Affairs file is stated as follows:

> Officer Fitzgerald was relieved of duty, prohibited from having access to the Police Department building, and had his gun, badge, and Police Officer status taken away because he allegedly threatened Police Officer Stephen Seney with violence. Officer Seney was, within a year thereafter, alleged to have threatened violence against his wife and an Internal Affairs Investigation was conducted . . . . Plaintiff [seeks] . . . the file of that investigation including the statements of Officer Seney and his wife . . . . Plaintiffs believe that these documents could lead to the discovery of admissible evidence regarding 1) whether Seney's threats of violence were treated differently than Officer Fitzgerald's; and 2) Seney's alleged sensitivity to the alleged threats of violence made by Officer Fitzgerald and as such, whether Seney had a different motive . . . in complaining to Mayor Tutunjian about the alleged threats by Officer Fitzgerald.

*Id.*

The Defendants refuse to disclose Seney's Internal Affairs file because such materials are not reasonably calculated to lead to the discovery of admissible evidence, and are protected by the law enforcement privilege and otherwise confidential pursuant to New York Civil Rights Law § 50-a.

In a subsequent filing, Fitzgerald modifies his reasons for seeking Seney's Internal Affairs file and additionally argues that such information may lead to admissible evidence of disparate treatment of employees who engaged in similar conduct. Dkt. No. 78, Pl.'s Lt.-Br., dated Nov. 15, 2011. Where a party charges that he was retaliated against, "[t]he causal connection between the protected activity and the adverse employment can be established indirectly with the circumstantial evidence, for example . . . through evidence of disparate treatment of employees who engaged in similar conduct[.]" *Summer v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990); *see also Gronowski v. Spencer*, 424 F.3d 285 (2d Cir. 2005). Apparently, the gist of Fitzgerald's argument is that he was treated less favorably by the Defendants than Seney and accordingly Seney's Internal Affairs file will or should confirm the disparity.

A Discovery Hearing which involved this issue was held on October 28, 2011. Because this Court agrees with the overall policy promulgated in New York's Civil Rights Law § 50-a, that law enforcement personnel files, especially internal affair files, are classified as either privileged or confidential, this Court directed the Defendants to produce the file for an *in camera* review as to relevance. Dkt. No. 77, Disc. & Sch. Order, dated Oct. 28, 2011, at p. 2. After yet another Discovery Hearing, which was held on November 16, 2011, wherein the dynamics of disparate treatment as it may apply to discovery in this case were argued, the Court issued an Order permitting the parties to more fully develop their arguments in their respective subsequent letter-briefs. Text Order, dated Nov. 16, 2011. Seney's Internal Affairs file was delivered to our Chambers on November 18, 2011, and the parties' respective Letter Briefs were filed shortly thereafter. Dkt. Nos. 80, Pl.'s Lt-Brief, dated Nov. 21, 2011, 84, Defs.' Lt.-Br., dated Nov. 29, 2011.

Fitzgerald claims that there are "large differences" between how the Defendants, particularly

Defendant Tutunjian, "reacted" to Officer Seney's conduct, when compared to how they reacted to the alleged conduct of Fitzgerald. Dkt. No. 80 at p. 1. Essentially, however, the primary and distinguishing point made by Fitzgerald is the purported role that Defendant Tutunjian may have played in his investigation and the alleged adverse employment action. *Id*. at p. 2 (providing an outline of Tutunjian's acts relative to Fitzgerald). On the other hand, the Defendants assert that the submitted documents do not reveal that the Seney Investigation was handled materially disparately to Fitzgerald's Investigation. Dkt. No. 84 at p. 1. Morever, the Defendants note that the City of Troy's General Order No. 03.02 permits an internal affairs investigation to be conducted at the discretion of the Chief of Police and that "an officer may be reliev[ed] from duty when it appears that such action is in the best interest of the department[.]" *Id*. at p. 1; Dkt. No. 84-1, Gen. Order No. 03.02 at pp. 2-3.[1]

In terms of searching for admissible evidence of possible disparate treatment, especially when the claim of disparity centers around the possible involvement of the Defendant Mayor in the disciplinary process, patrolling through a single privileged and confidential police officer file is not the best nor most fruitful approach. Nor should confidentiality be set aside solely for this reason when such relevant information of potential disparate treatment can be gleaned from far better sources than a single disciplinary file. If the issue of disparate treatment, again particularly in terms of Defendant Tutujian's role, is so central to establishing that the alleged adverse employment action was retaliatory, then that information should have been asked directly of Tutujian and the other Defendants rather than asking this Court to lay bare an individual officer's confidential internal

---

[1] Further, General Order 03.02 states that the Chief of Police may, "[u]pon the basis of a formal investigation and/or circumstances indicating an immediate need," suspend a member of the police force. Dkt. No. 84-1 at p. 4.

affairs file to support such a proposition. And, it would be a true leap of faith to presume that a single confidential disciplinary file could ever provide such a revelation of disparate treatment in lieu of seeking the exact same information from those who are better informed on such a proposition and possibly through a well considered interrogatory. An internal affairs file should not be disclosed solely for a reason such as this and a court should strongly consider other more reasonable options to unearthing such claims without dispensing with statutory and collectively bargained privileges and allowing a party to wade through a confidential personnel file. *See* Dkt. No. 84-1, General Order 03.02. For this reason, the Court denies Fitzgerald's request.

Nonetheless, there exists other bases for denying the relief. The Court's review of Seney's Internal Affairs files does not, as Fitzgerald claims, indicate any "large differences" between their respective investigation and alleged adverse employment action, and there is no "material" disparity between how the two were treated that could give rise to such a claim. *McGuiness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001) (citing *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) for the proposition that to show disparate treatment of similarly situated employees, it must be material in all respects); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (confirming the "all material respects" standard for disparate treatment claims). For the most part, rather than there being "large differences" in the way these two employees were treated, the differences identified by Fitzgerald as being disparate are, in fact, either immaterial or solely idiosyncratic. The only claimed difference between the two, whether it is material or not, is that Mayor Tutunjian may have interposed himself into the initial stages of Fitzgerald's investigation. Again, this point alone should not permit a piercing of protected and privileged materials when there is a less circuitous route to relevant information that is calculated to lead to admissible evidence.

Furthermore, the Court finds that peeling back these privileges and exposing the contents of Seney's file is not calculated to lead to admissible evidence.

But, more revelatory and extremely curious, is that Fitzgerald and his current counsel are both keenly aware of nearly every fact and nuance of the Seney investigation based upon their personal participation therein. They know or should know (1) exactly what Seney was accused of doing, (2) the nature and the extent of his suspension from duty, (3) that Seney was relieved of his firearm and badge, (4) the misconduct charges that were lodged against him, (5) that the investigation lasted nearly a year, (6) that he was directed to undergo a psychiatric examination, and (7) the agreed upon disposition of the charges. They know or should know these things because they represented Seney throughout his entire ordeal and strongly advocated on his behalf.[2] On their face, the above listed employment actions appear to be materially similar as to what Fitzgerald claims happened to him, with some minor nuances, and, if there was a perceived disparity in the final outcome, Fitzgerald's and his Counsel's participation on Seney's behalf may have generated it. In fact, it could be argued that Seney's outcome may have been more worse than Fitzgerald's.

In any event, since Fitzgerald already knows or should know all of this, there is no need to pry through Seney's Internal Affairs file and roam in the shadow zones of relevancy to explore matters which do not presently appear germane on the theory that it might conceivably become so.

---

[2] Without revealing too much of the contents of the file, there are notations that highlight the following: (1) on February 22, 2008, Fitzgerald's attorney, who also represents the Troy Patrolman Benevolence Association (PBA), filed a letter stating that he represents Stephen Seney and claiming that his suspension was unconstitutional and also apprising the Defendants that he was aware that Seney's wife, who had claimed domestic violence, had essentially withdrew "the purported basis for the [adverse employment] actions[;]" (2) as president of the PBA, Fitzgerald advocated for the return of Seney's personal guns and mentioned that the PBA's attorney may get involved; and (3) Fitzgerald actually signed Seney's settlement agreement.

Other than securing further impeachment, which is undoubtedly a motive for seeking this particular discovery, as first expressed to this Court, there is no persuasive argument that disclosing the file will lead to relevant evidence. Fitzgerald wants the statements of Seney and his wife as to the subject matter of the Internal Affairs Investigation. Such statements are not calculated to lead to admissible evidence of disparate treatment but rather may be a wellspring of possible impeachment of Seney. In fact, however, the issue of Seney's domestic tumult is collateral to Fitzgerald's claims and may not be allowed as impeachment in any event since it will have little bearing on the matter of truthfulness. Furthermore, there is no relevant information within the file that would suggest, as Fitzgerald intimates, Seney's alleged sensitivity to the alleged threats of violence made by Officer Fitzgerald or what motive he may have had in complaining to Mayor Tutunjian about the alleged threats by Officer Fitzgerald.[3]

In all material respects, Seney's Internal Affairs file is not relevant and will not lead to admissible evidence. Under these findings, the Court denies Fitzgerald's motion to compel disclosure and this file will remain confidential. This Ruling also applies to Deputy Chief McAvoy's records previously designated as numbers 1 and 9. *See* Dkt. No. 82, Disc. Order, dated

---

[3] The Court raised this issue during a Discovery Hearing and we raise it again here. If Attorney Walsh represented Seney throughout his Investigation, and through attorney-client communications became privy to much which is stated above, and possibly more, he may be precluded from exploiting such information, even as impeachment, against his former client on behalf of another. "A lawyer shall not knowingly reveal confidential information, as defined in this Rule, or use such information to the disadvantage of a client or for the advantage of the lawyer or a third person." N.Y. COMP. CODES R. & REGS. tit. 11, § 1200.1.6. Here, if it is accurate that Counselor may have become privy to all of the above and yet intends to use this information against his former client, he is precariously close to a conflict of interest. It is also conceivable that asking this Court to divulge the contents of the Internal Affairs file and to further reveal Seney's and his wife's statements regarding the domestic incident could improvidently lead to an unwitting end-run around such a conflict. This is yet another reason for the Court to proceed cautiously and not reveal the contents of such a confidential file.

Nov. 22, 2011. Nonetheless, because it was reviewed by this Court in rendering this Decision, Seney's Internal Affairs file shall be filed on the docket under seal. *Lugosch v. Pyramid Co. of Onondaga County*, 435 F.3d 110 (2d Cir. 2006).

**IT IS SO ORDERED**.

December 5, 2011
Albany, New York

Randolph F. Treece
U.S. Magistrate Judge